2005 OK 13

**Max CASEY, Patricia Nichols and Carolyn O'Neal Plaintiffs/Appellees,**

v.

**Margie CASEY, Defendant/Appellant.**

**No. 99,217.**

Supreme Court of Oklahoma.

March 8, 2005.

James A. Williamson of Tulsa, OK, for Plaintiffs/Appellees.

Charles J. Brackney of Jay, OK, for Defendant/Appellant.

LAVENDER, J.

¶1 The issue in the present cause is whether the trial court erred in entering judgment as a matter of law in favor of the Joint Tenants in its determination that Joint Tenants are sole owners of the joint tenancy property in question by virtue of right of survivorship and that Widow has no homestead interest in the property. Widow appealed, claiming a probate interest in the property pursuant to 58 O.S. § 311 and the COCA reversed and remanded with instructions in Widow's favor. We hold that the trial court correctly entered judgment as a matter of law in favor of Joint Tenants as to this issue in this case. We further hold that the purported homestead property was "otherwise disposed of according to law" within the meaning of § 311 when title passed by operation of law to the surviving Joint Tenants upon the death of their co-joint tenant father and therefore, at that time there was no property to which Widow's probate homestead right could attach.

## I

### FACTS AND PROCEDURAL HISTORY

¶2 Earl Casey married his second wife, Widow, in 1982. Joint Tenants are the adult children of Earl Casey and his first wife. For many years prior to his marriage to Widow, Earl Casey owned property on Grand Lake (hereinafter "lake property").[1] For the first several years of their marriage, Earl Casey and Widow resided in Tulsa and traveled to the lake property for occasional weekend visits.

¶3 In 1983, during that period of their periodic use of the lake property as a vacation home, Earl Casey conveyed the lake property by warranty deed[2] to his children

1. The record reflects Earl Casey purchased the lake property during his first marriage to Joint Tenants' mother, Era Mae Casey, in 1956.

2. The warranty deed, which was executed on May 4, 1983, expressly provides "[t]his property does not constitute the homestead of the first party; no other signatures necessary." Widow's own deposition testimony includes her acknowledgment that she and Earl Casey did not permanently reside at the lake property until sometime in 1988. Despite this acknowledgment, Widow nevertheless complains in her Motion to Reconsider that the 1983 warranty deed conveyance was "contrary to and in direct derogation of his

(the Joint Tenants) and to himself as joint tenants with a right of survivorship. Earl Casey and Widow thereafter moved to the lake property sometime in 1988, thus establishing the lake property as their permanent residence at that time. The couple resided at the lake property until Earl Casey's death in January, 2002.

¶4 Upon Earl Casey's death, Joint Tenants requested that Widow vacate the property and served Widow with a Notice to Quit in May, 2002. Widow refused to vacate the lake property, asserting her homestead right as the surviving spouse.

¶5 Joint Tenants filed the instant quiet title action on June 14, 2002 to clear title to the lake property as well as to other property not subject to this appeal. Joint Tenants filed a Motion for Partial Summary Judgment [3] as to the lake property, which the trial court sustained, providing in its Journal Entry of Judgment that the Joint Tenants "are the sole and only owners in Joint Tenancy with right of survivorship" and that Widow "has no right title or interest" in the lake property. Widow thereafter filed a Motion to Reconsider, which the trial court denied, determining "upon [Earl Casey's death], record ownership upon the deed passed to the children. No property remained in decedent's name that homestead could attach to." [4] The trial court certified the case for immediate appeal pursuant to 12 O.S.2001, § 994 [5] in its Journal Entry of Judgment of

---

then wife's marital, and homestead rights and interests in and to the subject Lake Property." Widow later concedes in the same Motion that she "is making no claim herein of or for any right, title, or interest in ownership in and to the 'Lake property'. Her claim of right is only for the widow's probate homestead exemption of the continued use and occupancy, not title, of the subject Lake Property, the former marital home...." While Widow's concession is contained in what she has labeled a motion, this motion contains citation to legal authority as well as argument and is therefore in substance a brief and we shall treat it as such. "Oklahoma case law has long allowed admissions in the brief to be regarded as a supplement to the appellate record." *Brennen v. Aston*, 2003 OK 91, ¶4, 84 P.3d 99, 100 n. 3; *Deffenbaugh v. Hudson*, 1990 OK 37, 791 P.2d 84, 86, n. 3 (citation omitted). Further, "[w]here a party to an action makes solemn admissions against his interest in a pleading, they should be treated as admitted facts, and he will not be heard to question the correctness thereof at any stage of the case in the trial court or on appeal...." *Tway v. Hartman*, 1937 OK 536, 75 P.2d 893, 896 (citation omitted).

3. We note that the Joint Tenants' quest for "partial summary judgment" should have been termed a "motion for summary relief" or "motion for summary disposition of an issue." *See Akin v. Missouri Pacific RR.*, 1998 OK 102, ¶4, n. 1, 977 P.2d 1040, 1042; Rule 13 of the Rules for the District Courts, 12 O.S. Ch. 2, App.1.

4. Court Minute of April 4, 2003 and filed on April 9, 2003 in the District Court of Delaware County.

5. This statute applies in cases in which there are multiple claims or parties. It provides for the immediate appeal of fewer than all of a party's claims when the trial court certifies that there is no just reason for delay and expressly directs the filing of a final judgment, decree, or final order.

In other words, when one complete claim has been fully decided, but other claims stand unresolved, the trial court may advance the decided claim for immediate review. *See Liberty Bank & Trust Co. v. Rogalin*, 1996 OK 10, 912 P.2d 836, 838; *Davis v. Gray*, 1994 OK 60, 875 P.2d 1145. In order for an adjudicated claim to be suitable for immediate appeal pursuant to § 994, it must not arise from the same transaction or occurrence as the unadjudicated claims. *Rogalin*, 912 P.2d at 838; *see Tolson v. United States*, 732 F.2d 998 (D.C.Cir.1984) (discussing separate claims for purposes of Federal Rule 54(b), which is similar to 12 O.S.2001, § 994(A)); *Retherford v. Halliburton Co.*, 1977 OK 178, 572 P.2d 966, 969 (providing "this jurisdiction is committed to the wrongful act or transactional definition of 'cause of action.' "). An appellate court is not required to accept a trial court's § 994 certification, but "retains the power to reverse the trial court's certification for abuse of discretion." *Shackelford v. American Airlines, Inc.*, 1996 OK CIV APP 27, 916 P.2d 282, 284 (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 100 L.Ed. 1297). Our *sua sponte* analysis of all the Joint Tenants' claims filed with the trial court reveals that the claim at issue in the instant appeal concerning the lake property (labeled tract "A" in Joint Tenants' Petition) was a separate and distinct claim from the remaining unresolved claims. The unresolved claims involve the parties' dispute over other tracts of land (labeled tracts "B, C and D"), which are purported to be held by Defendant in a constructive trust for Plaintiffs. (Joint Tenants subsequently filed an Amendment to their Petition to Quiet Title, which acknowledged that tract "B" is part of the property referenced as tract "C" and that these properties "should not be considered as separate parcels.") The instant claim concerning the Joint Tenants' rights versus the Widow's purported homestead rights in the lake property is a discrete claim, which clearly does not arise out of the same transaction or occurrence as the

February 21, 2003 and in its April 11, 2003 Order denying Widow's Motion to Reconsider.

¶ 6 Widow appealed and the COCA reversed and remanded with instructions, determining that Joint Tenant's "title and occupancy [was] subject to the right of homestead according to [58 O.S. § 311]." Joint Tenants thereafter filed their Petition for Certiorari. We previously granted Joint Tenants' Petition for Certiorari.

## II

### THE TRIAL COURT CORRECTLY DETERMINED JOINT TENANTS WERE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO THE LAKE PROPERTY.

■ ¶ 7 As a preliminary point, we note that "summary judgment is appropriate only when it appears [from the pleadings, affidavits, depositions, admissions or other evidentiary materials] there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law." *Flanders v. Crane Co.*, 1984 OK 88, 693 P.2d 602, 605; *Carris v. John R. Thomas & Assoc.*, 1995 OK 33, 896 P.2d 522, 530; 12 O.S. Ch.2 App., Dist. Ct.R. 13(d). An order granting summary relief disposes solely of law questions and is reviewable by a *de novo* standard. *Copeland v. Lodge Enterprises, Inc.*, 2000 OK 36, ¶ 8, 4 P.3d 695, 699; *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. Additionally, as this case involves the interpretation of the probate homestead statute, 58 O.S. § 311, we note that a legal question involving statutory interpretation is likewise subject to *de novo* review. *Fulsom v. Fulsom*, 2003 OK 96, ¶ 2, 81 P.3d 652, 654 (citation omitted).

■ ¶ 8 We also note preliminarily that it is uncontroverted that the lake property at issue in this case is joint tenancy property, the principle characteristic of which is a right of survivorship in the joint tenants. *See In re Estate of MacFarline*, 2000 OK 87, ¶ 16–17, n. 5, 14 P.3d 551, 558. Generally, upon the death of a joint tenant, the joint tenancy property "do[es] not become part of the deceased joint tenant's estate, but becomes the sole property of the surviving joint tenant." *Id.* at ¶ 16, 558 (citations omitted). Further, "by the very nature of the tenancy, title of the joint tenant who dies first terminates at death and vests *eo instanti* (i.e., immediately) in the survivor. Because joint tenants are seised of the whole while alive, the survivor's interest is simply a continuation, or extension of his/her existing interest." *Id.* at n. 5 (citing *Clovis v. Clovis*, 1969 OK 170, 460 P.2d 878, 881). Longstanding Oklahoma case law clearly provides that joint tenancy property passes by operation of law to the surviving joint tenants at the instant of the joint tenant's death. *Bleakley v. Bowlby*, 1976 OK 158, 557 P.2d 894, 897; *Littlefield v. Roberts*, 1968 OK 180, 448 P.2d 851, 855. Thus, pursuant to the above general rules governing joint tenancy property, upon the death of joint tenant Earl Casey, his title to the lake property terminated and vested immediately by operation of law in the surviving Joint Tenants.

¶ 9 Widow asserts her constitutional [6] and statutory homestead interest, relying primarily upon 58 O.S. § 311 as the basis for asserting Joint Tenants' interest in the lake property is subject to her probate homestead right. Section 311 provides in pertinent part as follows:

Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, except as in this title

---

parties' unresolved claims concerning other parcels of property. Therefore, the trial court properly exercised its discretion in its certification and entry of a final appealable order as to the lake property claim.

6. OKLA. CONST., Art. 12, §§ 1 and 2 provides for the extent, value and exemption of the homestead, such exemption intended as protection against creditors. This constitutional homestead exemption is distinct from the surviving spouse's statutory probate homestead rights of possession and occupancy at issue in this case. For a discussion of the differences between the constitutional homestead exemption rights and the probate homestead rights, *see Mercer v. Mercer*, 1961 OK 210, 365 P.2d 554, 556; *Bowers v. Gardner*, 1926 OK 167, 250 P. 490.

provided, *until it is otherwise disposed of according to law. ...*

*Id.* (emphasis added). The statutory language expressly provides protection of the surviving spouse's homestead right as against disposition of the property via probate administration. In keeping with the plain meaning of this statute, we have determined the surviving spouse's "right to occupy and live on the whole homestead is *superior to rights of codevisees* of interest in [the] property, whose rights are postponed during her life, or until her voluntary abandonment." *Mercer v. Mercer,* 1961 OK 210, 365 P.2d 554, 554 (Fifth Syllabus by the Court)(emphasis added). We have held "[t]he homestead is reserved to the family if the title is in either husband or wife...." *Lehman v. Tucker,* 1936 OK 169, 55 P.2d 62, 63 (citations omitted). Homestead rights acquired by "[n]aked possession without any title or interest whatsoever may, under some circumstances, be sufficient as against all the world except the true owners and those claiming under them." *Van Meter v. Field,* 1945 OK 173, 159 P.2d 546, 549 (citations omitted).

¶ 10 In this case, we note that in 1983, Earl Casey executed a warranty deed to the lake property (acquired by him prior to the mar-

riage) and thereby conveyed the property to himself and to his children in joint tenancy with a right of survivorship *at a time when the lake property did not constitute the homestead of the couple.* Thus, this is not a situation in which one intentionally sought to deprive his spouse of a homestead. *See Gross v. Gross,* 491 N.W.2d 751, 753 (S.D.1992)(providing homestead laws "are intended to prevent one spouse, in life or in death, from unilaterally depriving the other spouse of a homestead.")

¶ 11 Widow analogizes Joint Tenants' interest in the lake property to that of codevisees' interest and asserts the application of the rule in *Mercer v. Mercer* on the facts of this case. Joint Tenants argue this matter is distinguishable from *Mercer* and assert this is a case of first impression.[7] Joint Tenants cite authorities from Florida[8] and South Dakota,[9] which support the proposition that a surviving spouse has no homestead interest in joint tenancy property because the deceased owned no interest after his death to which the surviving spouse's homestead interest could attach.[10]

█ ¶ 12 The COCA apparently agreed with Widow, as it determined that Joint Tenants' interest in this case was likewise subject to Widow's homestead right pursuant to

---

7. Our pronouncement today is consistent with this Court's prior holding in *Cooper v. Long,* 1923 OK 519, 220 P. 610, 610 (Syllabus by the Court) ("[a] cotenant, the head of a family, ... cannot subject to the homestead rights a tract of land held in cotenancy, to the exclusion of the rights of the other cotenant ....."); *see also Gottsch v. Ireland,* 1961 OK 4, 358 P.2d 1097, 1101 (holding "[a] tenant in common will be allowed his homestead in the common property as against claims of creditors, but not as against the claims of his cotenants so as to defeat their right to partition....").

8. *Ostyn v. Olympic,* 455 So.2d 1137 (Fla.Dist.Ct. App.1984) (holding that upon death of joint tenant, the joint tenancy property vested immediately in the surviving joint tenant by right of survivorship and the deceased joint tenant held no ownership interest in the marital home/joint tenancy property to which the surviving spouse's homestead right could attach).

9. *Gross v. Gross,* 491 N.W.2d 751 (S.D.1992)(holding that upon the death of joint tenant, title passed by operation of law to surviving joint tenants and widow had no homestead

right in the property). This case was decided pursuant to a homestead statute, which was virtually identical to § 311. *See infra* note 12.

10. Widow asserts these authorities are distinguishable from the facts of this case because the property at issue in each of these cases was transferred in joint tenancy with a right of survivorship *prior to* the second marriage. She argues that Earl Casey executed the deed *during their marriage* and that this fact somehow defeats the surviving Joint Tenants' claim. Oklahoma law clearly provides that it is the *time of death* of the joint tenant, which is the critical event for purposes of determining the status of the parties and the property in this case. It is the joint tenant's death, which prompts the vesting of interest in the surviving Joint Tenants in this case by operation of law. *See In re Estate of MacFarline,* 2000 OK 87, ¶ 16–17, n. 5, 14 P.3d 551, 558; *Bleakley v. Bowlby,* 1976 OK 158, 557 P.2d 894, 897; *Littlefield v. Roberts,* 1968 OK 180, 448 P.2d 851, 855. Further, "the effect of the probate homestead vested in [the surviving spouse] is to be determined by the status of the parties as it existed at the time of the death." *Mercer,* 365 P.2d at 557.

*Mercer.*[11] In making this determination, the COCA ignored the critical legal distinction between property subject to probate administration proceedings, i.e., property subject to testamentary disposition, versus property held in joint tenancy with a right of survivorship. As we noted in *Mercer,* "[s]urvivorship is the distinguishing characteristic of a joint tenancy. And it is this distinctive characteristic of survivorship which, on the death of one of the joint tenants, precludes the devolution upon his heirs of any interest in the estate held in joint tenancy." *Mercer,* 365 P.2d at 556 (citations omitted). Unlike property subject to probate administration, "[a]s to property held in joint tenancy, there is nothing to inherit from the one dying first. The survivor takes under the original grant, his estate being simply freed from participation by the death of his former tenant. The survivor takes the entire estate to the exclusion of the heirs of the deceased." *Id.* (citations omitted). While the law clearly protects the surviving spouse's homestead right to possession and occupation from disposition to other heirs and/or other beneficiaries via probate administration proceedings,

neither *Mercer* nor § 311 provide similar protection of the homestead right as against disposition to true owners by operation of law. It is the distinguishing characteristic of the right of survivorship, which leads us to a different conclusion here from that in the *Mercer* case.

¶ 13 Additionally, the COCA also appears to have ignored express language of § 311, which expressly provides for the surviving spouse's right to "continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, except as in this title provided, until it is otherwise disposed of according to law."[12] As noted above, a deceased joint tenant's interest passes by operation of law to surviving joint tenants at the instant of the joint tenant's death. We hold that upon the death of the joint tenant Earl Casey, the lake property was "disposed of according to law" within the meaning of § 311 when his title and ownership terminated and vested by operation of law in the surviving Joint Tenants. Further, since there was no title in either

**11.** The COCA's determination in this case appears to have been based at least in part on a misunderstanding of the facts in *Mercer.* In its analysis of *Mercer,* the COCA opinion provides in pertinent part as follows: "In *Mercer,* as here, a second wife was involved and children by the first marriage of the deceased were surviving joint tenants. The Court ruled that the surviving wife had the right to occupy and live on the property during her life, or until abandonment, and that such right was superior to the right so the children-joint tenant survivors." COCA opinion, p. 7 (citing *Mercer,* 365 P.2d at 554, 557).Close analysis of the facts in *Mercer* clearly reveals that while the parties there were factually similarly situated to the parties in this case, i.e., children challenging the step-mother's homestead right, the critical dissimilarity to the case at bar is that the children in *Mercer* were **not** joint tenants in the purported homestead property, but rather, the children in *Mercer* were codevisees of equal shares of an interest in their deceased father's property via his will. It is this critical factual dissimilarity of the children's interest, which leads us to a different conclusion here from that in *Mercer.*

**12.** 58 O.S. § 311. We note that in reaching its determination in *Gross v. Gross, supra* note 9, The Supreme Court of South Dakota relied upon a virtually identical South Dakota statute, which provided in pertinent part as follows: "Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole home-

stead *until it is otherwise disposed of according to law. ...*" SDCL 43–31–13 (emphasis added). Historical analysis of these statutes reveals that the text of § 311 (originally enacted as Terr. Okla. Stat. § 1375 (1890)) was adopted from the original version of the South Dakota statute, Comp. Laws Dak. 1887, § 5778. We have held "that when a statute has been adopted from another state, the judicial construction of that statute by the highest court of the jurisdiction from which it is taken accompanies it, and is treated as incorporated." *Sudbury v. Deterding,* 2001 OK 10, ¶ 8, 19 P.3d 856, 858 (citations omitted). Thus, we are pressed to construe our statute in accordance with The Supreme Court of South Dakota's statutory construction in *Gross v. Gross,* 491 N.W.2d 751 (S.D.1992) (holding that pursuant to SDCL 43–31–13, ownership of the property transferred by operation of law to the surviving joint tenants upon the death of the co-joint tenant and there was no homestead right of possession in the surviving spouse of the deceased joint tenant). We have previously noted the similarity of South Dakota's homestead statute to our statute and have further cited with approval South Dakota case law construing the statute in support of our determination in *Karbs v. Bouse,* 1945 OK 5, 154 P.2d 968, 970 (holding remarriage of the widow does not terminate her homestead rights where she continues to occupy and use the land as a home).

Earl Casey or Widow at the time of his death, the homestead was not reserved to the family and Widow had no homestead right of possession and occupation of the lake property. *See Lehman v. Tucker*, 1936 OK 169, 55 P.2d 62, 63 (citations omitted). Further, in accordance with Widow's concession that she held no title, ownership or interest other than her purported homestead right to continue to possess and occupy the lake property, we hold that Widow's homestead right acquired by naked possession alone was inferior to the interest of the true owners, the Joint Tenants, in this instance. *See Van Meter v. Field*, 1945 OK 173, 159 P.2d 546, 559 (citations omitted). Finally, since the lake property was joint tenancy property impressed with the distinguishing characteristic of survivorship, Earl Casey's title terminated and vested immediately in the surviving Joint Tenants upon their father's death and he held no interest to which his surviving spouse's homestead right could attach. The trial court correctly determined that Joint Tenants were sole owners of the lake property as a matter of law and that Widow had no homestead interest therein.

### III

### SUMMARY

¶ 14 In sum, we hold the trial court correctly entered judgment in Joint Tenants' favor as a matter of law in its determination that Joint Tenants are sole owners of the joint tenancy property in question by virtue of right of survivorship and that Widow has no homestead interest in the property. We further hold pursuant to 58 O.S.2001, § 311 that the lake property was "otherwise disposed of according to law" because title and ownership passed by operation of law to the surviving Joint Tenants upon the death of their co-joint tenant father and therefore, at that time there was no property to which Widow's probate homestead right could attach. The COCA erred in reversing and remanding with instructions. For the reasons specified above, the opinion of the Court of Civil Appeals is vacated and the trial court's Journal Entry of Judgment is affirmed in its entirety, as is the trial court's Order overruling Widow's Motion to Reconsider.

¶ 15 Upon Certiorari previously granted,

THE COURT OF CIVIL APPEALS' OPINION IS **VACATED;** JUDGMENT OF THE DISTRICT COURT IS **AFFIRMED.**

¶ 16 WATT, C.J., WINCHESTER, V.C.J., OPALA, EDMONDSON, TAYLOR and COLBERT, JJ., concur.

¶ 17 HARGRAVE, J., dissents.

¶ 18 KAUGER, J., dissenting.

**I would deny cert as improvidently granted.**